Good morning, Your Honors, and may it please the Court, I'm Clyde DeWitt from Las Vegas. I represent James Linlor, the appellant. Could you move the mic up a little bit? Oh, I'm sorry, but it was preceded by a shorter person. I think the podium might move, too, does it, if you need it higher? I'll bend down a little bit if I have to. Okay, but I think it does move. We're not — even though I'm short, I'm not against tall people. In the way of parties, the Department of Motor Vehicles is not a party to this appeal, and I think the clerk got the impression that it was. It's only the director. I would like to reserve three minutes. Okay. And I have filed a Rule 28J letter, which the Court can roundly condemn me for being late on it, and I apologize. I moved my office the first of the month, and things were a little chaotic. But the significance of it is especially the Lee v. Salazar case, which Judge Smith is probably more familiar with than I am, and I see by your response that you are. I know a little bit about that case. Excellent opinion, Your Honor. Thank you. And if Judge Hicks had known about that opinion when he addressed this case, I think it would have come out differently. Essentially, it's on all fours. It was a — Counsel, help me with this, though. The — there we're dealing with something that was clearly capable of repetition. I mean, you have the horses coming out all the time, and they're making it so that the journalistic photographer couldn't ever get the pictures. In this case, though, what I want you to help me with is it seems like your client ultimately got the license plate he wanted. The Department of Motor Vehicles said, you know, this regulation and the statutes in the process of being repealed, which it was, we're not going to force this anymore. It's been three years since they've enforced it according to what's in the record, if I understand it. There's a little bit of a gap between Lee v. Salazar, and this is they're not in terms of what is capable of repetition. There's two capable of repetition issues, I guess, at least. Okay. One is the roundup of the horses is certainly capable of repetition. But I would urge that elections are virtually guaranteed to have repetition in primary elections. And my client has been a little bit gun-shy about applying for any more license plates after he spent $12,000 on attorneys to get the first one. That election — Wait, wait, wait. You say elections — because Palin was the license plate, that's what you're talking about. Yes, she was the vice presidential candidate at the time. I understand. So I thought you were suggesting that your client was running for office. No, no, no. Maybe I missed something in this record. He's far from that. But it's very clear that there's going to be more elections, and he — But there have been. There have been. The fact there have been more elections is not relevant. It really is not the question of whether there are going to be more elections, but whether they're going to — the defendant is going to attempt to restrict the use of the license plate to prevent a political message. And they went through a fairly formal repeal of the regulation that they relied upon in the first instance. It's actually a little bit more than three years. It's probably closer to three and a half. It's stopped — they stopped enforcing it when the ALJ ruled against them. I don't — I mean, it seems to me what this case is about is counsel fees. It's an element of the case, but it's not the whole thing. I mean, that's what this appeal is about, is about counsel fees, that you're not really worried about this happening again. You just want to — you know, you're just looking for a way to get the case to a second hearing. In fact, I'm not quarreling with your right to it. I'm just talking about what the case is about. Well, the one statute got repealed, but there's another statute that wasn't repealed and I think has since been amended. The regulation was appealed — was amended, I should say, which — the regulation is just a statement of this particular director's DMV policy. The statute which underlies this would — Well, it's more than just that. I mean, it's not just that he can change it by — with a pen. There was a — there was a formal, what we would call in the Federal context, rulemaking procedure. And the regulation that was relied upon by the Department of Motor Vehicles, if that's what they're called, was repealed in a fairly formal way, and they'd have to go through a whole new rulemaking procedure to reinstate the regulations upon which they relied. So that's all gone. I would respectfully disagree. The regulation says, here are reasons why we will deny license plates. Right. The statute that underlies this says they can deny a license plate for any reason that they want. And that's still there. The way I read the statute, it says that they can deny it, not that it doesn't say for any reason they want it, but to the extent that they can deny it, it says pursuant to a regulation. I don't believe that's what the statute says. I think — Well, okay. But do you have — okay. That if — so maybe — let's say maybe it's not moot, your challenge relative to the statute, because the statute still exists, right? Yes. But is there any indication that the DMV has ever relied on NRS section 482.3667, subsection 5, as an independent authority to reject any plate applications, instead of relying on the implementing regulations? So if that's the case, then maybe it's not moot, but maybe your interpretation of the statute's wrong. Well, the statute says what it says. And this is the sort of thing — Well, but do you have any — is there any independent authority that — has that ever happened, that based on the statute, or has that always been based on the regulation? I'm not sure there's a way to find that out. To go back for years and years and years when they've had personalized license plates — Okay. You don't know of any. I don't think — I don't think anybody can accumulate that information. And, in fact, when they — when they denied him the original denial of the Palin license plate, they relied on the reg. They didn't rely on the — they didn't say, we don't need a reg. The statute itself, as you can — Well, they had the regulation, so they didn't need to look back to the statute. But the fact of the matter is, as I see it, they can. And the regulation doesn't say these are the only reasons. It just says here are reasons why we'll deny the license plate. It doesn't say the only reasons. Counsel, can you help me with this? As you know, as a federal court, we have to have a case of controversy. I'm aware of that. I'm sure you are. And here you have a situation where your client was able to get the license plate that he wanted. Right. He's concerned that in the future he's going to be denied the opportunity to get whatever license plate he wants of a political nature. But when it comes to standing and mootness being part of that, we really can't speculate. We really need to look at something that is realistically capable of repetition. That's one of the exceptions. And what I struggle with on this — we've had a number of cases of late dealing with is that I'm having trouble finding what your client can point to specifically and say, yeah, I got that license plate, but here is something that the department is doing to somebody else or whatever. There's just some pattern that shows that it's going to surreptitiously do this. It seems like it's speculation that you're engaging in. I would point to Virginia v. American Booksellers, which was cited in their brief. What happened there is the state of Virginia said, well, we're not really sure whether we're going to enforce this ordinance or not. And the Supreme Court said, well, look, it's on the books. And remember, this is a first amendment — This is not this case. They're not saying we're not sure whether we're going to enforce it. They're basically taking the position that they needed a reg. The reg's been repealed. The statute is entirely consistent with the notion that they need a reg. And nothing has happened in the last three, three-and-a-half years to suggest that this is going to be repeated. I don't even know that your client's interest goes beyond Sarah Palin to begin with. He says it does in his declaration. Well, okay. I'll take it. I don't — so he's got another license plate. Well, if you want to save any time, you should probably sit down and I'll take it. That's what I'm going to do. Okay. Sit down to 35 seconds. I'll give you — depending on what the other party says, I'll give you one or two minutes for rebuttal. Good morning. May it please the Court. My name is Joe Reynolds. I'm a chief deputy attorney general for the State of Nevada here on behalf of Bruce H. Breslow, the former director of the Nevada Department of Motor Vehicles and the Department of Motor Vehicles. So who is — who is — who is the appellant, according to you? Who is the appellee? We are the appellee, Your Honor. Who is we? He said — Excuse me. I'm here on behalf of the Department of Motor Vehicles and its former director, Bruce Breslow, which I think underscores a point before this Court, is that the director who is named in the lawsuit is currently not the director of the Department of Motor Vehicles anymore, nor was he the director at the time the appellant was originally denied the plate, which begs the question of what relief could Mr. Lindlore obtain in this appeal? Well, if he's being — you apparently claim that the director, Breslow, wasn't involved in the conduct that gave rise to Lindlore's claims, but what authority would require the director to be involved, assuming he's being sued in his official capacity? Your Honor, I — I was raising that — to raise the point that — that there is no longer a live controversy or relief for Mr. Lindlore to obtain, should this proceed. Now, let me ask you this, then. If he — okay, the reg's gone, but the statute's still there. So if you — if I look at Mr. Lindlore's claims to the extent that they're based on the statute, which he does complain they're — they claim they're based on the statute, why are these claims moot if the statute hasn't been repealed? Your Honor, as — as Judge Corman was just indicating, the exact wording of the statute reads — and this is NRS 4823667 of the Nevada Revised Statute, subsection 5 — the department may limit by regulation the number of letters and numbers and prohibit the use of inappropriate letters or combinations of numbers. This is an enabling statute, where the Nevada Legislature grants the Department of Motor Vehicles to enact regulations. And it's — Well, so I guess what I'm saying is maybe it's not moot. Maybe he just — it's wrong. Your Honor, it — Because if he reads the statute in a — he reads the statute in a way that says they can do it under the statute. Your Honor, I would submit that that statutory interpretation is contrary to its plain meaning and its purpose and leads to an absurd result. Okay. So then it wouldn't be moot as to the statute. It's just he's wrong. Mr. Lindlores, I would disagree both that it is — it is moot, and I — we do disagree as we stated in our brief, that his interpretation is also incorrect. But you're asking us really to have faith in the Department, I think, because the wording here is that the Department can limit by regulation the number of letters and numbers. You can do anything you want with a license plate with that. And what is the standard? The standard is to prohibit the, in quotes, inappropriate letters or combinations of letters and numbers. Well, if you don't like Sarah Palin, then using her name is an inappropriate combination of letters, is it not, or could be? Judge Smith, again, this goes back to the core issue of standing, that hypothetical, speculative concerns. No, but you do claim that this — that it would be speculative that this could happen again. And I think what Judge Smith is saying — you're saying we're the government, we're here to help. Well, I don't think that Mr. Lindlore feels like you helped him that much before, and ultimately it ended up getting reversed, and he got the plate because someone was probably inappropriately helping. So — so why is it — you know, why do we have to trust you that it's speculative when, if we look at the conduct, it's sort of like if my kids lie to me, why do I have to now trust that you're telling me the truth, because you lied last time? The issue, Your Honor, is Mr. Lindlore raises a very narrow claim, a narrow issue. It's for prospective injunctive relief. So we're looking to future conduct that he raises as First Amendment challenge. To the extent that the — he's asking this Court to interpret the word inappropriate in the enabling statute, well, again, that use of the word inappropriate is limited by regulations. And it's the regulations — Anyway, you're basically just saying that the statute, which obviously controls the regulation, that's the basis of it, the regulation is something that's presumably promulgated based upon a state version of the APA, right? Correct. That's what happens. Correct. So you get notice and so on. But the reality is, it is the government that writes the regulation. So you're basically, again, coming back to the concept where the government trusts us. I'm frankly troubled by this concept of inappropriate. The word is, as far as I can tell, not defined. Is that a correct understanding? It's not specifically defined in this statute. So inappropriate is, to some degree, in the eye of the beholder. Your Honor, all statutes are limited by the First Amendment and other laws. And, again, it's a broad enabling statute to allow regulations that are consistent with the laws, with the U.S. Constitution, with the Nevada State Constitution, and all other Are you suggesting that if a statute has not been used in a particular way before, we cannot include that it remains an enabler of conduct that may be prohibitable because it's a violation of a constitutional right? Those type of questions and speculation is exactly why Article III standing is a necessary element and threshold requirement before even bringing a matter before There's a case called Wolfson that comes out of Arizona where a guy was running for political office and he was prohibited from doing certain things. And he said the same thing was going to happen to him next time he ran. And our court in Wolfson concluded that it wasn't moot because it was capable of repetition. It was future. Why is this different? Because the regulation at issue is Nevada Administrative Code 482.320 has been permanently repealed and it does not exist. And that's the regulation. We're talking about the statute. The statute, Your Honor, is, again, an enabling statute to allow the DMV, the transfer of authority from the Nevada legislature to the Department of Motor Vehicles to make regulations. Is there anything in this statute? That would bar the DMV if it had somebody and I'm just using a hypothetical here because this gentleman's representing somebody who is a sponsor of Sarah Palin. Say there's somebody in the Department of Motor Vehicles decided, boy, I don't want any license plates out here that are supportive of Sarah Palin. So I'm going to suggest that we promulgate a regulation because I think that would be inappropriate. And if they did that, it would be OK under this statute, would it not? Because the DMV person in question thinks it's inappropriate. First of all, Judge Smith, under Nevada Revised Statutes 233B, it's Nevada's Administrative Procedures Act, that does require, as you suggested, noticing, review by our legislative council bureau, public hearings, public comment periods, and opportunity for public review and comment upon that regulation. This is not a type of regulation. There's one more protection which he got. He didn't have to bring he won before he even brought this lawsuit. That is, there was an appeal to an administrative law judge on which he prevailed even before this lawsuit was brought. That's correct, Judge Corman. This was self-corrected by the Department of Motor Vehicles during the administrative process. And the Department of Motor Vehicles did the right thing. And this regulation was They didn't do the right thing at first. They ultimately did the right thing. Correct. That is correct. But bottom line is, you're saying if this gentleman has a problem in the future, then he brings the lawsuit at that point where we'll have a specific issue directed for us to souther his speculative. Is that basically your position? Yes. Yes, it is, Judge Smith. But even more than that, that the regulation, the complaint was very narrowly tailored to a challenge to his ability to engage in political speech. But he challenged the statute and the regulation. Yes, Judge Callahan. The regulation still does exist. The regulation does exist. And the statute. No, the regulation I thought was true. Excuse me, I misspoke. The statute still exists. The regulation at issue has been repealed. I apologize for that. I started that. And it was a very narrowly tailored argument below. And the concern was regarding Mr. Lindlore's ability to engage in political speech. So shouldn't we then just remand to the district court to determine the challenge to the statute? That's certainly an ability of this court to do, but I believe it's unnecessary because Mr. Lindlore does not have standing. And again, this is moot. And he's gotten the relief he asked for. Okay. Thank you for your argument. Thank you. I'll give you a minute. Thank you. I learned for the first time that we now have a new director. And Judge Smith said it right. Have faith in the department. Trust the government. How do you distinguish White v. Lee, which involved a change of policy by an official in the Department of Housing and Development? And we said it was moot because it was not likely to reoccur. Well, in Reed v. Gilbert, which is cited in our brief, and Pruitt v. But the court said, well, they're free to change it back. And that's the problem. The same would be true of the statute. At some point, you have to think about how, what is the likelihood the legislature is free to reenact the statute? They amended the statute this last term. They only meet every other year in Nevada. And they didn't change this part of it. They didn't have any reason to, arguably. This lawsuit? Well, you know, who in the Nevada legislature even knew about the lawsuit? The point of the matter is, well, why should they change it? Because it's unconstitutional. I think, well, it authorizes certain conduct. It authorizes certain regulations. The regulations may be unconstitutional. When the government decides it's going to let people have license plates that say whatever they want, they open up a can of worms, because people can put anything on their license plate that's protected by the First Amendment. A lot of things that are protected by the First Amendment are real, real offensive to other people. And that's just how it works. And censorship is inconvenient, it's burdensome, and it's supposed to be. That's what this is all about. That's why when you apply for a license plate, you ought to get it, unless it's something that, like, somebody got denied a license plate because it said no plate. Parking tickets, you never got them. And you would be entitled to it if it were an obscenity. If it's offensive sexually, he'd be entitled to it. If it's obscene or harmful to minors under the test that the Supreme Court has articulated, then it would not be protected by the First Amendment. What if a person views a political candidate as obscene? I beg your pardon? What if a person views a political candidate as being obscene? I would say that's a fairly common occurrence. But I don't think that falls under the Miller v. California test that the Supreme Court has articulated. I'm just curious, the denial of the Palin license plate, was that because of the person who denied it just didn't like Sarah Palin, or was it a view that you shouldn't have political commentary on license plates? I'm just curious. The given reason was it's political, although, as the record reflects, the Department had enforced the political rule on an incredibly hit-and-miss basis. Whoever is reviewing it, I mean, I can see that. You showed evidence that other political plates had been issued. Some had been issued and some had been denied, and there's no rhyme or reason for any of it, except some bureaucrat person said, well, you can't have this. Unless there's further questions from the panel, that would conclude argument. We've gone significantly over. Thank you both for your argument. This matter will stand submitted.
judges: Korman, Callahan, Smith